Okay, we'll proceed to our fourth case of the morning appeal number 2218. Davis versus the Illinois Department of Human Services. Lindsay, good morning. May it please the court. I'm Tammy Lindsay, along with Danny Wyndham. We represent the plaintiff appellants Diamond Davis and Antoinette Burns. This matter comes before this court on the appeal of the district court's grant of summary judgment. This case involves the interpretation of the Family Medical Leave Act. The issues presented are as follows. Whether Davis, a pregnant female approved for FMLA due to pregnancy was entitled for qualifying leave for morning sickness, notwithstanding the medical certification that stated Davis would only need leave for one prenatal visit a month. Second, whether Davis was required to comply with employers paid substitution leave policy in order to take FMLA leave. In order to be eligible for FMLA, there needs to be a serious health condition that makes an employee unable to perform functions of their employment. If the serious health condition is pregnancy, the regulation also provides that a pregnant female is able to take FMLA leave for any incapacitation due to a pregnancy related illness. Miss Lindsay, in the interest of time, would you mind if I ask you a pretty, pretty detailed factual question? Go ahead. Okay. The, the FMLA leave was approved on June one after Dr. Mahoney submitted her certification, and it was approved to date back to May 4th. Yes. Okay. So that means that it covered the absences that your client had on May 5 and May 6. Yes. What do we know about those absences? Were they morning sickness related? Yes, they were. How do we know that from the record? On April 29th, Davis again was ill at work and left work early and went directly to urgent care. At that time, she learned that the reason why she had been ill was due that she was pregnant. In the record, there were several days that Davis was sick and she didn't know the reason why. At the point that when she went to urgent care on April 29, she understood that the reason was because she was pregnant. No, I understand that. How do we know though that May 5 and May 6 were morning sickness absences as opposed to, you know, another doctor's appointment? Because we don't even have her testimony before the Civil Service Commission. Right. We don't have the full record of the Civil Service Commission, but in the record, even in the opinion in which the commission, the facts that the commission found that the doctor, when she was told that she was pregnant, recommended, because she was having the morning sickness, recommended that she missed the next couple of days. So you see in her attendance record, she was out on the 5th and those days following because she was out three consecutive days. That's what she got the application for applied to, to apply for. I got it. I got it. I understand. Thank you. The absence, the only issue, the absence at issue is the May 12. On May 12th, Davis notified Rebecca Irby, the administrative assistant, to the manager that she felt ill pertaining to her pregnancy and she needed to leave. The district court held that Davis, in looking at her medical certification, was only approved for FMLA leave for one doctor visit per month, and that she necessarily meaning she was not approved for any periods of incapacitation. Clearly, that is contrary to the law. According to the regulations, a pregnant female was entitled to leave for any periods of incapacitation due to the pregnancy related illness. Why didn't the certification say that then? It makes sense to me what you're saying, but why didn't the certification say she's approved for intermittent leave? She may have complications due to conditions related to pregnancy, which by the way, no doctor can predict. I mean, there could be 100 things that, you know, 100 things that happened during a pregnancy that could cause intermittent. Well, and that was our position. By virtue of being approved for But what about Crohn's disease? What about cancer? What about heart disease? Where do we draw the line and say, okay, if you have Crohn's disease, we know there are these side effects of Crohn's disease. And if you're only approved for FMLA leave for one doctor's visit a month, that includes every other potential side effect or condition caused by Crohn's disease. The difference of Crohn's disease is that Crohn's disease is a chronic illness that there are times where it is passive, and it's not active. And there are times where they're in a flare up with respect to pregnancy. When you're pregnant, you're pregnant for the entire duration. You're either pregnant or you're not, right? Pregnant or you're not. So there's not going to be a period of not being pregnant. The district court interpreted the medical certification to mean that the doctor had considered morning sickness. But as the judge said, I believe the regulations imply that possibly the female was better determined whether or not she was going to be sick enough that would prevent her from working and that a medical professional, including an OB-GYN, would not be the best person. If there was some question of whether or not Davis was in fact ill due to her pregnancy, we believe there was plenty of days that Davis called off her work, including May 11th, the day before May 12th. Davis called off work and went to see her doctor because she was ill due to her pregnancy. The employer was well aware that Davis was missing work because of morning sickness. So if they thought that the certification was insufficient, then the employer had the responsibility to go back and to question the she was missing work because of this, would that entitle her to an absence? And did Shapiro ever do that? Did Shapiro ever go back to Ms. Davis and say, you know, we know that you have a certification of pregnancy, we see that you don't have even requesting intermittent time off due to morning sickness. We know that you've had some morning sickness. You know, can you go and provide us additional information or supplement the certification? No, they did not. Your Honor, Shapiro thought that she was only entitled for leave for doctor visits, peers and incapacitation, which the law allows a pregnant female to take leave for peers and incapacitation. The judge's ruling was that she was not entitled to that. And so is it your position that prior to taking any disciplinary action, Shapiro was obligated to at least go back to Davis and say, hey, look, your, your certification isn't sufficient and isn't complete. Can you go provide us with additional information? Absolutely. Because the because the issue that Davis was suffering with was a qualifying leave. Therefore, they were responsible to go back and ask whether or not if the doctor had considered morning sickness, would they have approved her for FMLA for morning sickness? And when you say obligated, obligated by regulation, obligated by 305 C, expressly obligated? Yes. Yeah. Okay, very well. Okay. Thank you, Miss Lindsay. Mr. Windham, are you going to do you're going to do the rebuttal? Okay, very well. Okay, Mr. Rush. May it please the court assistant attorney general Caleb Rush appearing on behalf of the Illinois Department of Human Services. The department is asking this court to inform the summary judgment in its favor. Unless the court prefers otherwise, I'm going to focus on Ms. Davis's claim of FMLA interference, because there's no evidence in the record whatsoever regarding his burns employment. So the district court was correct, that there was no evidence to support that she had standing. This is notwithstanding some factual assertions that are found in the briefs on appeal, which are not supported by anything in the record. Okay. So, Mr. Rush, can you address the questions we were asking just previously, which is why didn't Shapiro go back to Miss Davis, if Shapiro thought that the certification did not authorize intermittent leave because of morning sickness, and say, you know, this doesn't cover what you wanted to cover, we need some more information. There's there's several important reasons why the FMLA did not obligate Shapiro to, you know, to ask Miss Davis for a new or updated certification. One of the most important reasons is that all of the information that was available to Shapiro about this, including the date of the absence in question may 12, this all predates the doctor's So Shapiro did everything that it was supposed to do under the FMLA and the regulations. But by the time that Shapiro decided to proceed with disciplinary action, it had the certification at that point, right? And as Judge Scudder points out, it was dated retroactively to May 4. And so certainly at that point, Shapiro, when it decided whether or not it wanted to discipline Miss Davis, would have looked at the certification, would have realized that Miss Davis had been missing work because of And at that point, didn't have sufficient information to go back to Miss Davis and say, Hey, look, we're, we're about discipline you it unless you provide us with more information. I think that the FMLA did not prohibit Shapiro from doing that. But it also did not obligate Shapiro from doing that. And that's what this court doesn't know what the section that Judge Scudder just read 825.305. Doesn't that obligate Shapiro to do that? No, it does not. I believe that that regulation is talking about when a certification is sufficient. And that regulation is talking about when a certification is sufficient on its face and this and it defines the sufficiency of a certification doesn't provide the employer with sufficient information to confirm that the employee has a condition that other things like duration. So so the state of a certification being sufficient or not certification is something that's determined on the face of the certification. It's not conditional any case law that you know of that interprets 825.305. See that way. Because what what you're saying seems quite at odds with what the what the regulation says. I don't I don't have a case that I'm aware of off the top of my head. But I but I can say that I am not aware of a single case that says well I'm sorry I think that Stoops is the is probably the best case for this proposition because there's there's no case that says that when an employer has a employer has some observes some information that an employee has a health condition and then after that and they would they have all the information they know from their first hand observation after that they get the employee's doctor's certification which Stoops says the employer is entitled to rely on and and then at that point that there's no obligation on the employer's part to request further information. This is a the chronology here is a really key distinction. Mr. Rush can I ask you a question? It is what I understood from the record. There's no dispute here. There's no argument that the certification received had one or more entries that were not completed or provided vague ambiguous or non responsive answers. At least because that the 805 305 C talks about complete and certain sufficient certification but it defines what is complete and it defines what is sufficient. I don't defines complete as one or more applicable entries have not been completed and I thought the certification that the plaintiff had here was a completed certification and there's no argument that the certification was insufficient as defined by the regulation. I didn't think certification is not vague ambiguous or non responsive. If I if I understand your question, your honor, I absolutely agree. What what what there's at least I understand your point on the timing. The point I think the point on the timing is the plaintiff took medical leave because she had morning sickness, then she provided a certification that said she's entitled to leave to medical leave for one doctor's appointment a month. There's no requirement in the law, at least none that I'm aware of. And you can tell me there is there is there a requirement in the law that says when the defendant when the employer receives that certification, the employer has to say to the plaintiff, the certification that you provided does not cover your leave that you took two So you need to go get a new certification to cover that leave. The employer can just accept the certification and say, OK, fine, this is your certification. It doesn't cover your leave. That's that's exactly right. The certification is absolutely sufficient on its face, and the employer was entitled to rely on it. What about the May 5 and May 6 leave? Is that FMLA leave? I don't. I don't think that the record establishes whether that leave was covered by no, no, it was back that so we know that the approval was backdated to May 4, right? And we know that she was. She was out on the 29th. She was out on the 4th, 5th and 6th, right? I think that's right. OK, and then she was out again on May 11th. Yeah, and then in May May 12 for four hours or something. OK, so May May 5 or May 6 in your judgment covered. In in my best judgment. Because the employer seems to have treated him as covered or the employer did. No, I don't think there's anything in the record that indicates that the the the employer allowed Ms Davis to take the time off. That doesn't mean that the Yes, he what's what troubles me about this is I I don't think the flare up business in the certification as a thing to do with the pregnancy. I think it's all about lupus. And it it seems impossible to me to fairly read the certification. As telling somebody an OBGYN telling somebody prospectively. That you will not have morning sickness that is going to keep you out of work. That would be very surprising to me. And so I think that the most likely construction of the flare up question is that the doctor thought. Is there anything about this high risk pregnancy? High risk in no small part because of the lupus that is going to prevent Miss Davis from working answer no. But then the employer. Doesn't raise any question at all. Shapiro doesn't raise any question all about the absence on May 5 or May 6, but then all of a sudden there's a problem on May 12. And they they talk about the certification. I think what's the certification have to do with it? Well, the certification is under the structure of the FMLA and the regulations. The certification is a crucial part of how the statute. No, I get it at that level of generality. But when you when you look at the flip a question about flare up doesn't make any sense. I think this is the point judged Kirsch is making a question about flare up makes a lot of sense to me if you're talking about. Asthma, arthritis, chronic back pain. We could probably name 50 others if we spent some time on it. It doesn't make a lot of sense to me in this case vis a vis pregnancy unless you're thinking about lupus. I think that this is a crucial question because what we're talking about here is a carve out that's found nowhere in the statute for certain serious medical conditions when the doctor certifies flare ups may occur or not. The employer is entitled to rely on it, but for certain other medical conditions, an employer who is, you know. Not necessarily possessing any medical training for certain the employer is presumed to know about 120 A4, which expressly contemplates morning sickness with pregnancy. It's just it's just a very odd. Frankly, I'm I'm really surprised that the defendant took this position. But we're here. This again, I refer the court to the Stoops case that says that an employer is entitled to rely on the statements in certification. The when an employer says observes, oh, you needed some time off. We're granting you some time off. Go ahead. I'm out of time. No, no, go ahead. And and you know, we need that medical certification. We need the official doctor's word. That's that's the last word that the employer should rely that the employer should be able to There's there's an incentive and a burden on the employees part if they need the certification to be different. But Mr. Russian Stoops, the employer went back to the employee and told them that right told her. Oh, you need to give us more information you need because your certification is doesn't seem to cover the leave the condition that you want to take leave for here. There's nothing in the record that Shapiro provided that opportunity to Ms. Davis, unless I'm mistaken. And along those lines, if I may, Judge Scudder, you know, the FMLA reminders document. Okay. In paragraph four, it says if a request for FMLA doc time is received and paid accrued benefit time is available to cover the absence, the employer will be required to submit the appropriate forms to repeated requests to utilize FMLA doc time prior to the exhaustion of paid accrued benefit time may result in disciplinary action. Is there anything in the record that would suggest that Ms. Davis had engaged in repeated requests to invoke the FMLA when she had accrued benefit time that would otherwise apply? I'm not sure if if that's in the record, but what is in the I'm reading from Shapiro's own policies, right? And, you know, I think a reasonable reading would be that if an employee was seeking FMLA time, and he or she had accrued benefit time, that the employee would be given a chance to submit appropriate forms to explain that. And that even if that person didn't, that person would only be disciplined after repeated requests to do so. And so I didn't see any evidence of the record that Ms. Davis had engaged in such repeated requests. The FMLA allows employers to enforce their standard policies for requesting, you know, for requesting days off, right. And so that's why I'm wondering whether Shapiro followed its own policy here. And Shapiro absolutely did follow its own policy, because the fact that  inaccurate request by using an FMLA time, it doesn't mean that an employee with a long history of many time and attendance abuses over a short employment history, but a long but a long serial record, it doesn't it doesn't mean that that gets wiped clean. And all of a sudden, the the the employee cannot be subject to discipline for for for yet one more time and attendance abuse after after this long record. To me, that that makes sense, except for the fact that we're dealing with the FMLA that has certain obligations to provide certain benefits to employees, you know, and so I look at this policy. And I think to myself, you know, what about an example where an employee took four hours of FMLA time thought the didn't have any other accrued benefit time, okay, and only had three. And so then she is required under law or is able under the law to take one hour of non paid FMLA time. But even in that situation, Shapiro would qualify that as an unexcused absence because of her employees error in putting down the amount of time that she thought she had. So why, why isn't that in that hypothetical? Why isn't that interference with the employee's ability to use FMLA time? I don't I don't think that the court needs to reach that question in this particular case. But I'll also refer the court to the district court statement, which you know, which which we stand by, which is, if in fact, Ms. Davis had been paid leave and had been entitled to unpaid to unpaid FMLA time, you know, then then maybe there might have been an FMLA interference case that could have gone to trial. But but that was not the case here. And I want to be clear, you know, we're talking about two separate and independently sufficient reasons in support of summary judgment, because on the certification issue, what we're doing is we're asking what Ms. Davis said, and we're asking employers to second guess the doctors, you know, explicit statements in the certification. And you rely upon the flare up language for that. And we do rely upon the flare up language for that. And there's, there's nothing in the FMLA or any case interpreting the FMLA that suggests that for some medical conditions, but not others, you know, that that that the employer should doubt the flare up language on the contrary, other than the regulation telling pregnant employees that they're entitled to FMLA leave for morning sickness. It's it's a regulation that that regulation says that that is a possible eligible condition. But that regulation does not contradict the statutes and regulations that say the medical necessity for FMLA, FMLA leave for a flare up requires a medical certification. That's, that's, you know, that overall statement is not contradicted by by saying that, well, you know, one type of potential flare up could be morning sickness, that the implication of that is not therefore, when an employee might qualify for FMLA leave based on pregnancy rather than some other serious condition, then the requirement to certify flare ups is out the window. That's, that's simply not what the regulation says. And then, of course, there's the separate independent reason, which is that Ms. Davis had reached the, you know, the 12th stage of progressive discipline, according to a policy that applied equally to all of the employees, and which this court has recognized in multiple cases, based on the FMLA regulations, employers are entitled to enforce. Mr. Rush, just getting back to my hypothetical, you said we don't have to deal with it in this case, because it's, the facts are different. But the, the reason I bring it up is because the FMLA reminders states exactly that procedure, the end of paragraph three, if the employee does not have the requested accrued benefit time to cover the absence, the absence will remain unexcused, whether or not it is an FMLA related absence, and disciplinary action may be taken. So that specifically contemplates the example or the hypothetical that I gave you. Yes, it does contemplate the hypothetical that you gave me. And if Ms. Davis had been, you know, if Ms. Davis had exhausted all forms of paid leave, I don't, I don't think we would be here today. But that's, but that's not the case before the court today. And I really do want to emphasize that when when Shapiro warns employees, okay, in the in the FMLA reminders, okay, you got to be on top of these benefit times. And, and it refers to, to its general policy six, two, which applies to all employees, you've got to be on top of these benefit times. And if you put in a request wrong, we have the deposition testimony of the human resources director, when you put in a request wrong, it creates a massive burden for the for the whole system. So we really need you to get this right. First violation, you're not going to get fired, second violation, you're not going to get fired, third, etc, etc. But but you have a series of 12 attendance and tardiness problems, then then ultimately, discharge is appropriate. It's not prohibited by the FMLA. And and the fact that there's a warning does does not all of a sudden erase this past track record. Okay, Mr. Rush. Any further questions? Okay, thank you very much. Appreciate it. Thank you. Oh, yeah, no problem. Mr. Wyndham. Good morning, Your Honor. May it please the court. I'm Danny Wyndham. I'd like to address a couple of issues that was raised during my opponent's argument. First of all, with respect to Stoops, in that case, the medical certification said that Mr. Stoops condition would not render him unable to do this job. Second of all, this court's decision in Hansen versus in the Hansen decision, essentially says, when there's certification, the certification is an estimate. And if the floor, if the employee's actions are such that they're taking more leave as stated in the certification, the employer has a right to request a recertification. Okay, Shapiro could have done that. In this case, they could have told Miss Davis that her certification did not cover morning sickness. They did not do that. What they did was they immediately proceeded to fire her. Did they have to do that under the law? Yes, they had an affirmative duty. What regulation says that? Off the top of my head, I think it's 115, but I'm not sure. It might be 305 that you discussed earlier, but they do have a duty to go back and say to the employee that, hey, your certification is inadequate. You need to provide us with some more information. In any event, they interpreted the certification to allow a leave for morning sickness on May 5 and May 6, but then all of a sudden, somehow it was problematic on May 12. That's correct. It was, but here's the thing. I don't understand that at all. What they do, Your Honor, is they don't consider the leave as FMLA leave. All of the leave that employee takes as FMLA is designated as some form of paid leave. If you look at the records and the records, the employee records, time records, and they're in the record, we had a sample of 48 employees who had taken qualified FMLA leave. In each and every case, but three, all of the time that was taken for FMLA leave was designated as whatever accrued paid leave that the employee has substituted. Did Shapiro account for them to be used concurrently, or is it consecutively? In other words, can you, because I see in the paid FMLA leave. When you use accrued benefit time for paid FMLA leave, I take it they're viewing both as being used concurrently. We take issue with that. We believe that they view it as being consecutively because that's what their records state. There are payroll records, and there are time and attendance records in the record. If you compare the employee's request for FMLA leave on the form, they will put sick or holiday of vacation in FMLA, but on the official records of the state of Illinois, all of the leave is designated solely as accrued paid time. None of it is designated as FMLA leave, and none of it is designated as paid leave and FMLA leave. Mr. Windham, let me ask you a hypothetical question. If an employer has a policy that says you have to accurately record your time off, and it's legitimate policy because human resource is not going to fly spec time sheets, and they don't want to pay employees for vacation time that the employee doesn't have, OK? So let's say an employer has that policy. You have to accurately record your time off. So pay period one, the employee takes four hours of vacation time, and the employee doesn't have four hours of vacation time. The employer calls the employee and says, you don't have four hours of vacation time. You can't take vacation time. The employee says, ah, FMLA, I'm covered. It's unpaid FMLA leave. Pay period two, the employee does the exact same thing. The employer calls and says, you can't do this. You can't inaccurately record your time, and you've again recorded it as paid vacation time, which you don't have. The employee says, ah, I'm covered by the FMLA. Third pay period, the employee does the exact same thing. The employer calls the employee and says, you've done it now third time, OK? You've violated our policy the third time, you're fired. The employee says, ah, you actually can't enforce your policy at all. It means nothing to me because under the FMLA, you've now interfered with my right to take FMLA leave. So you've got an employee in pay period one, pay period two, pay period three, inaccurately records their time. Attempting to get paid for time, vacation time that the employee does not have. Is the employer totally without any recourse whatsoever to enforce its policy so long as the employee has an FLA certification? Basically, yes, because section 207. In order to find for you, we have to read the law that way, right? That's what section 207 expressly allows. It says that if the employee does not comply with the employer's paid leave substitution policy, the employee remains entitled to take FMLA leave. They're just not entitled to the pay. That's what section 207 says. That's what the court held in Spricklin. That's the decision from the 11th Circuit which we're asking you to follow. But that's what the regulation said. That's the express language of the regulation. And that's also what the dissent said in the Allen case. That's what the regulation said. And, you know, if that's a policy with the employee misrecording or not recording the paid time, then in that situation, the employer should do what this court recognized in Brotherhood of Maintenance versus CXS. The employer should just designate the time. Whatever paid time the FMLA time as well as paid time. And that will solve the problem. I see I'm out of time. If there are any other questions, I'd be glad to answer. Okay. We took a little extra time with Mr. Rush. Any points you wanted to make? Yes. Don't worry about the red light. Okay. I want to be fair here. Okay. There are two points I really want to make. One is, and a lot of them you've already covered, but this court should rule, look, we're asking you to follow your own precedence, okay? We got the Barrett case, we got the Valdivia case, and we got the Zicorilla case. Under Barrett, FMLA leave, leave cannot be both authorized leave and unauthorized leave. It's one or the other. When they designate approved FMLA leave as unauthorized leave, that is interference. That is interference. The second thing is, they knew that she was pregnant, they knew that she was sick because of her pregnancy, and they knew she couldn't do her job. That was enough to put them on notice that she was entitled to FMLA leave. That's all that was required under Valdivia and Burnett case. Notice can be constructive. They had enough information to know that she was entitled to FMLA. The final point is this here. We want you to rule that as a matter of law, classifying approved FMLA leave as unauthorized constitutes interference. That's the basis of our class claim. Anytime an employee requests FMLA leave, is approved for FMLA leave, and takes FMLA leave, they will classify it. On the first instance, they don't have to do it seven or eight times. On the first instance, they designate it as unauthorized, simply because the employee did not correctly substitute the paid leave for the FMLA leave. As a matter of law, that's interference. Okay. Very well. We appreciate the argument from all counsel. We'll take the appeal under advisement.